IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LINDA TRIETSCH, | : | |
| Plaintiff, | : | |
| | | Case No. 3:09cv00413 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

Previously in this social security case, the Court adopted in full a Report and Recommendations and Judgment was entered in Plaintiff's favor. (Doc. #s 12, 15, 16). The result: the matter was remanded to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g) for payment of Disability Insurance Benefits (DIB).

This matter is before the Court on Plaintiff's Motion for Attorney Fees Under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) (Doc. # 17), the Commissioner's Response (Doc. # 18), and the record as a whole.

Plaintiff seeks an award of attorney fees under the EAJA in the total amount of

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

1

$3,994.58. The Commissioner contends that an EAJA award to Plaintiff is unwarranted because the Commissioner's position in support of the administrative denial of Plaintiff's DIB application was substantially justified.

## II. DISCUSSION

### A. Standard of Review

To obtain an award of attorney fees under the EAJA, Plaintiff must establish that she is a prevailing party. *See* 28 U.S.C. §2412(a)(1)(B); *see also Townsend v. Social Sec. Admin.*, 486 F.3d 127, 129 (6th Cir. 2007). Plaintiff became the prevailing party when she obtained a reversal and remand for payment of DIB. *See Shalala v. Schaefer*, 509 U.S. 292, 300-302 (1993) (social security claimant who obtains a sentence four judgment reversing denial of benefits and requiring further proceedings is "prevailing party" for purposes of EAJA). With this established, the analysis turns to whether the position taken by the Commissioner was substantially justified and whether "special circumstances exist warranting a denial of fees." *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 445 (6th Cir. 2009) (citing 28 U.S.C. § 2412(d)(1)(A)); *see Townsend v. Social Sec. Admin.*, 486 F.3d 127, 129 (6th Cir. 2007).

"[S]ubstantially (i.e., for the most part) justified," under the EAJA, denotes a position that is "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004). A reasonable person could find

the Commissioner's position substantially justified if it rested on "a reasonable basis in law and fact." *Pierce*, 487 U.S. at 566 n.2; *see Howard*, 376 F.3d at 554. Even if it ultimately lacked merit, if the Commissioner's position rested on a reasonable basis in law and fact it meets the substantial justification standard. *See Pierce*, 487 U.S. at 566 n.2; *see also Howard*, 376 F.3d at 554.

The EAJA places the burden on the Government to demonstrate that its position was substantially justified. *See Healey v. Leavitt*, 485 F.3d 63, 67 (2nd Cir. 2007); *see also Hackett v. Barnhart*, 475 F.3d 1166, 1169 (10th Cir. 2007)(courts have "uniformly recognized" that this burden "must be shouldered by the Government.").[2]

    **B.**    <u>**Analysis**</u>

The Commissioner argues that his position in support of the Administrative Law Judge (ALJ) was substantially justified because "the ALJ's decision did not employ an improper methodology." (Doc. #18, PageID at 151). The Commissioner points out that the even though the ALJ did not connect all the dots in parts of his analysis and did not fully explain some of his findings, "[a] court has held that it had 'no trouble concluding the Commissioner's position was substantially justified, even though the ALJ was not as thorough in his analysis as he could have been.'" (*Id.*)(quoting, in part, *Cunningham v. Barnhart*, 440 F.3d 551, 554 (6th Cir. 2004)). The Commissioner concludes that his

---

[2] *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006); *Goad v. Barnhart*, 398 F.3d 1021, 1025 (8th Cir. 2005); *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001); *Lively v. Bowen*, 858 F.2d 177, 180 (4th Cir. 1988).

position was justified to a degree that could satisfy a reasonable person. These contentions lack merit.

The Commissioner's position in support of the ALJ's decision was not reasonably based in law. Upon his de novo review of the record in this case, U.S. District Judge Rice concluded, in part, that the ALJ "failed to apply the correct legal standards in evaluating the opinion of Dr. Goren as the Regulations and case law require. Accordingly, the hearing officer's reliance on Dr. Goren's opinion to discount that of Dr. Sinha and/or the other longitudinal evidence of record was error." (Doc. #15, PageID at 134). The prior explanation of this (in the Report and Recommendations) bears repeating and likewise illustrates why the Commissioner's present search for substantial justification lacks merit.

> The ALJ fully credited the opinions provided by Dr. Goren because of his specialization as a neurologist, a proper consideration under the Regulations. *See* 20 C.F.R. §404.1527(d)(5). Contrary to Plaintiff's contention, the ALJ's other reason – Dr. Goren's his "lengthy history of testifying for the administration" – can be a proper factor to consider under the Regulations. Under the heading, "Other factors," the Regulations allow the ALJ to consider "any factors" brought to his attention or any factors "of which [he is] aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in the case record are relevant factors that we will consider in deciding the weight to give a medical source opinion." 20 C.F.R. §404.1527(d)(6). The ALJ's decision, however, does not explain why these arguably permissible factors led him to fully credit Dr. Goren's opinion. An explanation by the ALJ was essential in the present case.
>
> Dr. Goren testified, "the Claimant should be restricted to lifting or carrying 20 pounds occasionally and 10 pounds frequently. That exertional restriction is what Dr. Bamberger gave on July 7, 1997 at [Exhibit] 6F, page

4

29. There would be no other exertional restrictions." (Tr. 405). Yet a careful reading of Dr. Bamberger's July 7, 1997 notes fails to reveal this exertional restriction. Dr. Bamberger makes no mention of a specific amount of weight or frequency of lifting that Plaintiff was restricted to. *See* Tr. 200. Dr. Bamberger noted, "We need to keep her on light duty for another 2 months." *Id.* Dr. Bamberger's notes did not define what he meant by "light duty," and he did not otherwise indicate that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. *See id.* Although Dr. Goren apparently concluded that Dr. Bamberger's "light duty" reference to be the same as the Regulation's definition of "light work," *see* 20 C.F.R. §404.1567(b), Dr. Bamberger's notes simply lack sufficient information to support Dr. Goren's conclusion. *See* Tr. 200. Dr. Goren, moreover, provided no meaningful explanation of his opinions and instead provided little but his conclusions. For example, he testified that Plaintiff's conditions did not meet certain Listing-level impairments without explaining why. Except for Dr. Bamberg's July 7, 1997, Dr. Goren failed to point to any evidence in support of the work restrictions he believed Plaintiff had, and he provided no neurological or other medical reason to support his opinions. *See* Tr. 405-06. Instead, his surprisingly brief testimony – which the ALJ fully credited – consisted of several paragraphs, part of which was not supported by the evidence (Dr. Bamberger's 7/7/97 note) Dr. Goren cited. *See* Tr. 404-05. One would expect much more from a neurologist who has a lengthy history of testifying during social security hearings.

      The last point aside, under the Regulations and case law, it was not enough for the ALJ to single out two factors – specialization and lengthy history of testifying – as a basis for crediting Dr. Goren's opinions without also considering his opinions under the regulatory factors that detracted from his opinions, such as "supportability" and "consistency." *See* 20 C.F.R. §404.1527(d)(3)-(4); *cf. Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."); *cf. also Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984); *Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 57 (S.D.N.Y. 2002). The Regulations and Rulings, moreover, required the ALJ to weigh Dr. Goren's opinions under the same regulatory factors that are applicable to treating medical source opinions. *See* 20 C.F.R. §404.1527(d), (f); *see also* Social Security Ruling 96-6p, 1996 WL 374180. The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §404.1527(d) ("we consider all of the following factors in deciding the weight to give any

5

medical opinion...."); *see also* 20 C.F.R. §404.1527(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §404.1527(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same). The ALJ erred by failing to do so in the present case.

The Commissioner contends, "The ALJ considered the record, evidence, including Sinha's opinion, and reasonably concluded that Plaintiff had the [residual functional capacity] to perform a reduced range of light work." (Doc. #8 at 72). As discussed above, Dr. Sinha provided an assessment of Plaintiff's functional capacity in August 2008. (Tr. 379-86). Dr. Sinha believed that Plaintiff had the ability to walk/stand for only two-three hours in an eight-hour workday and Plaintiff could not lift more than five pounds, as well as additional limitations due to Raynaud's disease. *Id.* Dr. Sinha reported that Plaintiff's back was limited to a range of motion of two degrees due to pain. (Tr. 385). Dr. Sinha thus concluded that Plaintiff lacked the functional capacity to perform the full range of sedentary work. *See* Tr. 386.

In rejecting Dr. Sinha's opinion, the ALJ relied on the opinions of Dr. Goren, the nonexamining medical expert who testified at the hearing. (Tr. 21-22). Because the ALJ did not evaluate Dr. Goren's opinion as the Regulations and case law require, and because the evidence (Dr. Bamberger's 7/7/97 note) on which Dr. Goren relied did not support his opinion, the ALJ's reliance on Dr. Goren's opinion to discount Dr. Sinha's opinion was misplaced.

The Commissioner contends that clinical and diagnostic findings in the record did not support Dr. Sinha's opinion. Although the Commissioner cites to specific evidence in the administrative record, *see* Doc. #11 at 71-72, the Commissioner overlooks other clinical, diagnostic, or opinion evidence, the bulk of which confirms Dr. Sinha's opinions.

An MRI of Plaintiff's spine performed on October 4, 2007 showed a mild disc bulge containing an annular tear at L4-5, and other spinal abnormalities including, but not limited to, "the beginning of a perineural cyst" near the L4-5 near root. (Tr. 303).

Additionally, the administrative record contains records of Plaintiff's carpal tunnel surgery in January and February 1999 and ulnar nerve transposition of the right elbow on March 1997.  She also had a history of myotonia and Raynaud's syndrome. (Tr. 153). A June 2003 EMG that

6

revealed "mild residual bilateral carpal tunnel syndrome. There [was]left cubital tunnel syndrome noted" and it also "demonstrated diffuse myotonic discharges in all of the tested muscles." (Tr. 158). Dr. Kim, an orthopedic hand surgeon, stated that the myotonia "could account for some of the diffuse musculoskeletal symptoms she has had over the years." (Tr. 157).

[A] June 2005 EMG showed "mild bilateral median mononeuropathy at the wrist" and some slowing of the ulnar nerves both wrists. (Tr. 224). It was noted, "The patient did have myotonic potentials throughout the tracing that are consistent with her diagnosis of myotonia congenital." *Id*. An MRI done on September 29, 2005 demonstrated, "L5-S1 left foramina narrowing by combination of disc bulge and facet arthrosis....Central anular tear anad minimal central disc...." (Tr. 229). A November 2005 EMG of Plaintiff's left lower leg and lumbar spine showed diffuse myotonic discharges throughout. (Tr. 231). An EMG in May 2007 indicated myotonia and also revealed "[p]rolonged distal latencies of both median nerve is secondary to effect of cold. These are residuals of previous carpal tunnel syndrome." (Tr. 273).

A neurologist, Dr. John Kissel, diagnosed that Plaintiff had myotonia congenita based on her clinical and EMG findings. (Tr. 368). He also wrote:

> "Another aspect to her history is the multiple entrapments. This always raises the question of a genetic neuropathy with predisposition to pressure palsies, but this may simply be a manifestation of her myotonia and excessive exercise and hand use."

(Tr. 368).

Dr. Sanford Wolfe, a rheumatologist, evaluated Plaintiff on September 15, 2003. Plaintiff had trigger points and she had thickening of her right second and fourth palmer tendons and the left third and fifth palmer tendons. (Tr. 167). He wrote: "The symptoms that Mrs. Trietsch currently has may very well be due to myotonoia or myotonic dystrophy which is felt to be a more mild and chronic form of muscular dystrophy. Basically, myotonia is a neurologic disorder...." (Tr. 168). Dr. Demirjion, a pain management specialist, submitted Plaintiff's records dated November 8, 2005 through March 20, 2006. On November 8, 2005, Plaintiff had a reduced range of motion of her lumbar spine. The diagnosis was "[m]ultfactorial problem with diskogenic disease and facet disease,

7

> foraminal narrowing." (Tr. 246).
>
> On December 19, 2005, her examination showed myotonia in all muscles. The diagnosis was "[l]umbar diskogenic disease, facet narrowing, foraminal narrowing, myotonia." (Tr. 241). Dr. Demirjion found that Plaintiff, on March 20, 2006, had a reduced range of motion of her lumbar spine. She had myotonia and some atrophy in her hands. The diagnosis was "lumbar spine and sacroiliac joint disease, and spondoylosis." Tr. 234).
>
> In early December 2006 Plaintiff underwent a preoperative assessment for Dr. Rothstein. She had decreased sensation, absent Achilles reflex bilaterally, positive straight leg raising on the left, decreased strength, abnormal heel and toe walk, and lumbar tenderness. (Tr. 255-256).
>
> Office notes, dated June 6, 2002 through June 1, 2006, were submitted by Dr. Derksen. By 2005, she was diagnosed with carpal tunnel syndrome and ulnar nerve entrapment as well as her myotonia. She had decreased grip strength, tenderness, and positive trigger point. (Tr. 285-286). On October 7, 2005, Plaintiff was seen for back pain. She had decreased range of motion, reduced reflexes, reduced range of motion of her left leg, some weakness in her left leg, spasm, positive straight leg raising test on the left. (Tr. 276-278, 280, 282-84). This clinical findings support Dr. Sinha's opinion of disability.
>
> Accordingly, Plaintiff's contentions that the ALJ erred by rejecting the opinions of her treating physician and by instead relying on Dr. Goren's opinion and the opinions of the on-examiners are well taken.

(Doc. #12, PageID at 103-10)(footnote omitted).

The Commissioner's reliance on *Cunningham v. Barnhart*, 440 F.3d 862 (7th Cir. 2006) is appropriate only as recognition of the generality that an ALJ's decision might be substantially justified "even though the ALJ was not as thorough in his analysis as he could have been." *Cunningham*, 440 F.3d at 865. The *Cunningham* generality, however, does not apply here due to the ALJ's failure – detailed above -- to follow the legal criteria set forth in the Social Security Regulations and case law. Consequently, the undersigned

finds that the Commissioner's decision to support the ALJ's opinion was not "substantially justified." *Cf. Howard*, 376 F.3d at 554 ("Under the circumstances of this case, where the administrative law judge was found to have selectively considered the evidence in denying benefits, we hold that the Commissioner's decision to defend the administrative law judge is without substantial justification."); *see Gutierrez v. Barnhart*, 274 F.3d 1255, 1259 (9th Cir. 2001) (Commissioner's position not substantially justified where ALJ failed to comply with applicable Social Security regulation); *see also Fraction v. Bowen*, 859 F.2d 574, 575 (8th Cir. 1988) (claimant entitled to EAJA fees where government acted "contrary to clearly established circuit precedent").

Accordingly, Plaintiff's EAJA Motion is well taken.

### C. The Commissioner's Remaining Argument

The Commissioner asks the Court not to award EAJA fees directly to Plaintiff's counsel in light of *Ratliff v. Astrue*, __U.S.__, 130 S.Ct. 2521, 2524, 177 L.Ed.2d 91 (2010). In *Ratliff* the Supreme Court held: "a §2412(d) fees award is payable to the litigant and is therefore subject to a Government offset to satisfy a pre-existing debt that the litigant owes the United States." *Id.* at __, 130 S.Ct. at 2524; *see Bryant v. Commissioner of Soc. Sec.*, 578 F.3d 443, 447 (6th Cir. 2009)(same). In so holding, the Supreme Court recognized that historically the Commissioner paid EAJA fees directly to a prevailing plaintiff's attorney. *Ratliff*, __U.S. at __, 130 S.Ct. at 2528-29. The Court further noted that, based on the record before it, "the Government has since continued the

9

direct payment practice only in cases where the plaintiff does not owe a debt to the [G]overnment and assigns the right to receive the fees to the attorney." *Id*., 130 S.Ct. at 2529 (internal quotation marks omitted).

In the present case, the record lacks evidence tending to show that Plaintiff in fact owes a pre-existing debt to the United States that might cause his EAJA award to be subject to an offset under *Ratliff*. Without such evidence no ripe *Ratliff* issue exists and an Order requiring the Commissioner to pay Plaintiff's EAJA award directly to her is presently unwarranted. This conclusion is confirmed by *Ratliff* itself, where the government sought an EAJA offset based on its knowledge that the plaintiff owed it a debt that pre-dated the district court's approval of the EAJA award. 130 S.Ct. at 2424-25; *cf. Ratliff*, 130 S.Ct. at 2530 ("the litigant's obligation to pay her attorney is controlled not by the EAJA but by contract and the law governing that contract.")(Sotomayor, J., concurring).

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Motion for an Award of Attorney Fees Under the Equal Justice Act (Doc. #17) be GRANTED;

2. The Commissioner be ordered to pay Plaintiff's attorney fees and costs in the total amount of $3,994.58;

3. The Commissioner be directed to verify, **within twenty-one days of an Order adopting this Report and Recommendations,** whether or not Plaintiff owes a pre-existing debt to the United States that is subject to offset. The Commissioner be further ordered to pay the EAJA award directly to Plaintiff's counsel, if no such pre-existing debt exists; and

  4.  The case remain terminated on the docket of this Court.


November 15, 2012

                 s/ Sharon L. Ovington
                 Sharon L. Ovington
              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).